DECISION
{¶ 1} Relator, Bob E. Wall, Jr., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for permanent total disability compensation, and to issue an order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator argues that the commission failed to adequately analyze the psychological conditions of his claim. In denying relator's application for permanent total disability compensation, the commission relied on the reports of Drs. Lutz and Murphy. Relator does not challenge the medical report of Dr. Lutz. In his report, Dr. Murphy found relator to be a person of average intelligence who completed the eleventh grade and obtained a G.E.D. Dr. Murphy found that the allowed psychological condition of major depressive disorder had reached maximum medical improvement and resulted in a 16 percent whole person impairment. Dr. Murphy also concluded that the depressive order was not work-prohibitive and he could perform his former position of employment or any sustained remunerative employment. Relator argues that Dr. Murphy failed to consider the physical restrictions as a result of the allowed conditions of his claim. As the magistrate found, "it is understood that one could not return to other work for which one was not otherwise physically capable." Thus, we conclude that Dr. Murphy's report is some evidence to support the commission's decision to deny relator's application for permanent total disability compensation.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
 IN MANDAMUS {¶ 5} Relator, Bob E. Wall, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that relator is entitled to that compensation.
Findings of Fact:
 {¶ 6} 1. Relator has sustained several injuries arising out of his employment and its various claims have been allowed as follows:
 {¶ 7} "Contusion hematoma and subungeal hematoma, left ring finger.
 {¶ 8} "Contusion left groin (severe), pain lower back.
 {¶ 9} "Puncture wound with blood poisoning left foot.
 {¶ 10} "Sprain lower back, sprain left shoulder, sprain left arm.
 {¶ 11} "Sprain left shoulder, cervicalgia left shoulder impingement, degenerative joint disease left shoulder.
 {¶ 12} "Cervical sprain, thoracic sprain; major depressive disorder; lumbosacral strain; aggravation of pre-existing degenerative disc disease of the cerv spine resulting in a disc bulge of C6-7 to the right and a disc bulge of C5-6 to the right and disc herniation of C5-6 to the left."
 {¶ 13} 2. From a rehabilitation standpoint, the following evidence has been gleaned from the record:
 {¶ 14} (a) Relator's rehabilitation file was originally closed on March 22, 1983 because relator failed to respond with decisions regarding rehabilitation services. (Stip. 62.)
 {¶ 15} (b) The Ohio Bureau of Workers' Compensation ("BWC") sent relator a letter, dated July 26, 1993 in response to his having been referred for rehabilitation. The letter indicated that relator was not currently receiving temporary total disability ("TTD") compensation and that he was currently ineligible for services.
 {¶ 16} (c) In response to the decision to close relator's file, the BWC sent a letter to relator's counsel, dated August 6, 1993, indicating that relator's file was closed March 22, 1993 because relator failed to respond to the case manager regarding his wish to participate in services and no appeal was taken from that decision. The letter further indicated that TTD compensation was terminated July 6, 1993, as relator was found to have reached maximum medical improvement ("MMI") and that relator had referred himself to rehabilitation on July 12, 1993, but was denied because he was not receiving TTD compensation.
 {¶ 17} (d) Relator, through counsel, protested the decision to deny him rehabilitation services. (Stip. 58.)
 {¶ 18} (e) By form dated July 13, 1995, relator expressed an interest in participating in rehabilitation services. (Stip. 57.)
 {¶ 19} (f) By form dated July 13, 1995, relator authorized his doctors to furnish records to the commission with regard to his participation in rehabilitation. (Stip. 56.)
 {¶ 20} (g) The BWC sent a letter, dated July 17, 1995, to relator's treating physician asking him to note his medical treatment and prognosis. (Stip. 55.)
 {¶ 21} (h) By letter dated August 16, 1995, relator's treating physician indicated that relator should participate in a pain and stress management program/pre-admission evaluation. (Stip. 54.)
 {¶ 22} (i) The J. Leonard Camera Rehabilitation Center completed a vocational evaluation screening summary dated February 27, 1996, recommending that relator participate in the pain and stress management program, comprehensive vocational evaluation, career counseling, and dietary service. (Stip. 50-53.) A Multi-Disciplinary Evaluation Discharge Summary dated February 29, 1996, indicates that relator appears to be an appropriate candidate for rehabilitation, that he needs pain management and clearance from his doctors before he can begin participating. (Stip. 47-49.)
 {¶ 23} (j) A letter dated February 12, 1996 from the admissions staff at the rehabilitation center informing relator that he was scheduled to begin his multi-disciplinary evaluation program on February 20, 1996. (Stip. 46.)
 {¶ 24} (k) A BWC letter dated May 10, 1996, informing relator that his rehabilitation file was closed effective May 8, 1996, because it was recommended that any programming be delayed until after relator received treatment for bilateral carpal tunnel syndrome. The determination was made that relator's medical condition was presently too unstable to allow participation in rehabilitation programming. (Stip. 45.)
 {¶ 25} (l) A May 23, 1996 rehabilitation update indicating that relator had ex-pressed an interest in returning to work even though he was presently receiving both workers' compensation and PERS disability well beyond his salary at his prior job. The update indicates that relator was not cleared for admission because he needs to have surgery for bilateral carpal tunnel syndrome and it has been strongly recommended that he receive more frequent psychotherapy sessions to help resolve his suicidal thoughts. The letter indicates that relator has not received treatment for his bilateral carpal tunnel syndrome and that he has not increased his psychotherapy sessions over the last year even with repeated encouragement to do so. (Stip. 43.)
 {¶ 26} (m) The July 16, 1996 letter from relator's counsel requesting that relator's rehabilitation file be reopened because relator's bilateral carpal tunnel syndrome claim is pending in the court system. The September 6, 1996 letter from the case manager at the rehabilitation center indicating that, pursuant to the February 20, 1996 report of Dr. Julia Weinerman, relator's immediate participation in a program of rehabilitation could not proceed until relator had surgery for carpal tunnel on both hands, dealt with his chronic depression with frequent suicidal thoughts, and address his unrelated medical conditions. (Stip. 38-39.)
 {¶ 27} 3. On October 31, 2001, relator filed an application for PTD compensation. Relator's application was supported by the August 8, 2001 report of his treating psychiatrist, Dr. Edmond J. Goold, who opined that relator was totally disabled because of his allowed psychological condition. The application was also supported by the October 3, 2001 report of relator's treating physician Dr. Charles B. May, who opined that relator was permanently and totally disabled from any form of substantial gainful employment as a direct and proximate result of the allowed physical conditions covered in his claims.
 {¶ 28} 4. Relator also attached the April 7, 2002 vocational report of Molly S. Williams who opined that based upon his age, education, work history and taking into account his restrictions to sedentary work, he was permanently and totally disabled.
 {¶ 29} 5. Relator was examined by Dr. James Lutz with regard to his allowed physical conditions. Dr. Lutz completed a report, dated February 25, 2002, wherein he concluded that relator's allowed physical conditions had reached MMI, and assessed a 26 percent whole person impairment for those allowed conditions. Dr. Lutz concluded that relator was capable of performing work at the sedentary strength level.
 {¶ 30} 6. Relator was examined by Michael A. Murphy, Ph.D., for his allowed psychological conditions. Dr. Murphy issued a report, dated January 28, 2002, wherein he concluded that relator's psychological condition had reached MMI, and assessed a 16 percent whole person impairment. Dr. Murphy concluded as follows:
 {¶ 31} "The Claimant's Major depressive Disorder is not work-prohibitive. In my opinion, he is capable of employment in his former capacity. His condition would not restrict or prohibit sustained competitive employment."
 {¶ 32} 7. An employability assessment report was completed by Nancy J. Borgeson, Ph.D., CRC, ABVE, and dated April 19, 2002. Based upon the medical reports of Drs. Lutz and Murphy, Borgeson opined that relator could immediately perform the following jobs: "Assembler, lampshade," "Stone Setter," "Inspector, dowel," "Charge Account Clerk," "Order Clerk, fd. bev.," and "Call-out Opr." Following brief training in remediation Borgeson opined that relator could perform the following additional jobs: "Police Aide," "Repair Order Clerk," "Sorter," "Compiler," "Engraver, machine I," and "Yard Clerk." Dr. Borgeson concluded that relator's age was not a factor as he was a middle-aged person, that his education was likewise not a factor as he has completed his GED. With regard to his work history, Dr. Borgeson concluded that it was not necessarily a factor although his past jobs were mainly manual and he could have some difficulty adjusting to more intellectual work without some remediation or training.
 {¶ 33} 8. Relator's application was heard before a staff hearing officer ("SHO") on May 30, 2002, and resulted in an order denying the requested compensation. The SHO relied upon the medical reports of Drs. Lutz and Murphy and concluded that relator was capable of performing work at the sedentary strength level. With regard to the non-medical disability factors, the SHO concluded that relator's age was a neutral factor, that his GED will allow him to obtain or be retrained for basic entry-level sedentary positions, and that his work history, although providing him with no transferable skills, shows that his past jobs had been either skilled or semi-skilled. As such, the SHO concluded that relator had shown good abilities and skill level that would help him in sedentary work. The commission concluded that, taking into account his physical limitations, his age, education, and work history, relator was capable of performing some sustained remunerative employment.
 {¶ 34} In closing, the commission addressed the issue of rehabilitation and concluded as follows:
 {¶ 35} "The Staff Hearing Officer also finds that the claimant has been off work for eight years now and has made only one attempt at rehabilitation for 2 days at the Camera Center. This is for somebody who has had no surgeries related to the injuries, only sees his psychiatrist once very [sic] three months, and only sees his family practitioner once every three to four months. Cases have consistently held that a claimant has an obligation, if at all possible, to seek whatever rehabilitation or retraining is necessary to obtain employment. The Staff Hearing Officer finds that the claimant has not met that obligation."
 {¶ 36} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 38} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 39} Relator raises two arguments in this mandamus action: (1) the commission failed to properly analyze his allowed psychological condition; and (2) the commission failed to note that relator had made numerous attempts at rehabilitation.
 {¶ 40} Relator does not challenge the medical report and opinion of Dr. Lutz. Likewise, relator does challenge the report of Dr. Murphy. Instead, relator contends that, although Dr. Murphy indicated that relator would be able to return to his former position of employment, Dr. Murphy did not indicate that relator would be able to perform other sedentary jobs taking into account his psychological condition. Relator contends that the commission did not adequately consider the allowed psychological condition. This magistrate disagrees.
 {¶ 41} Dr. Murphy completed an occupational activity assessment wherein he specifically indicated that, based upon the allowed psychological condition, relator could return to any former position of employment and could likewise perform any sustained remunerative employment. In his report, Dr. Murphy indicated that relator's psychological condition would not restrict or prohibit sustained competitive employment. Although Dr. Murphy did not mention sedentary work, it is understood that one could not return to other work for which one was not otherwise physically capable. In the present case, the evidence indicates that relator is capable of performing at a sedentary work level and Dr. Murphy indicated that his psychological condition would not be work prohibitive. As such, this argument of relator's fails.
 {¶ 42} Relator also challenges the commission's reliance on its conclusion that relator had only attempted rehabilitation once. Relator contends that he had sought rehabilitation on numerous occasions and that the commission improperly penalized him based upon the commission's misunderstanding of the record. For the reasons that follow, this magistrate disagrees with relator's argument.
 {¶ 43} Relator's application for PTD compensation was denied based upon medical evidence that relator could perform sustained remunerative employment of a sedentary nature and because the commission concluded that, taking into account the non-medical factors, relator would be able to perform some sustained remunerative employment at a sedentary level. At that point in time, the commission indicated that PTD compensation was being denied. The commission then went on to cite an additional reason for denying PTD compensation, that being that relator had not made adequate use of attempts at rehabilitation.
 {¶ 44} Although relator is correct to note that he did make additional inquiries regarding rehabilitation, the record is equally clear that relator failed to follow up on any of the recommendations given to him by the rehabilitation specialist which were required prior to his being able to fully participate in rehabilitation. Specifically, relator did not have the surgery for carpal tunnel syndrome. For a time, this surgery was delayed because the issue was pending in the court system; however, that was one obstacle which the rehabilitation specialist saw in the way of relator being able to participate. As such, even though relator did make additional inquiries to the commission regarding rehabilitation and even though relator's attorney made inquiries, relator had yet to complete any of the preliminary steps which he knew needed to be performed prior to his admission into the program.
 {¶ 45} Because the rehabilitation issue was an additional reason for denying PTD compensation and because relator's argument that he strongly pursued rehabilitation is not quite accurate, this argument of relator fails as well.
 {¶ 46} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and this court should deny relator's request for a writ of mandamus.